JUSTICE RICE
concurring in part and dissenting in part.
¶24 I concur with the Court in reversing, under Issue 1, the summary judgment which was entered in favor of AMC, but would affirm the entry of summary judgment in favor of Defendant Kelman under Issue 2 and, therefore, dissent to that portion of the Court’s holding.
¶25 An agency is ostensible “when the principal intentionally or by want of ordinary care causes a third person to believe another to be his agent ....” Section 28-10-103, MCA (emphasis added). The Court concludes that there “was no evidence offered that AMC, the principal, did anything to lead Bellanger to believe Kelman was its [ostensible] agent.” See ¶ 21.1 respectfully disagree.
¶26 First, the District Court identified evidence offered by Kelman from which it could reasonably be inferred that AMC caused, by its omission or by want of ordinary care, Bellanger to believe that Kelman was its agent:
Defendant Kelman asserts that, at all time [sic] pertinent, he was acting as an agent of Defendant AMC with respect to AMC’s dealings with Plaintiff [Bellanger]. In his affidavit, Defendant Kelman asserts that he has served as a consultant to AMC since his retirement from AMC. Kelman also asserts that as part of his consulting with AMC, he “observes the company’s workforce and work [sic] with employees in an attempt to improve their work and AMC’s performance.”... Kelman’s assertion and these undisputed supporting facts indicate that Kelman was at least an actual or ostensible agent of AMC with certain management and supervisory responsibilities and authority.
Although Plaintiff avers that Kelman is not an agent of AMC, the Plaintiff has not supported this naked assertion with any supporting affidavits or deposition testimony. To the contrary, Plaintiffs deposition testimony actually supports and is consistent *228 with Kelman’s assertion that he was actually an agent of AMC.
¶27 Secondly, and more significantly, there was evidence of arguably intentional actions by AMC which would have caused Bellanger’s belief in Kelman’s agency. Abby Portney, AMC’s manager, made various statements to Bellanger about Kelman’s role with the company. For instance, following Kelman’s statement to Bellanger that he had just hired a new employee for AMC, Portney confirmed Kelman’s actions with Bellanger. Further, Portney told Bellanger that AMC would get in trouble if anyone found out that Kelman was actually participating in the management of the business and told Bellanger not to tell anyone.
¶28 Thus, Bellanger conducted herself on the belief that Kelman was AMC’s agent. Consistent with her understanding that Kelman had authority over her-that is, that Kelman had the authority to fire her; that she was required to take direction from Kelman, including calling him about AMC business when he was on vacation; and that Kelman was involved in AMC’s major decisions and that he was “running the company” with Portney- Bellanger reported Kelman’s abusive behavior to both Portney and AMC’s attorney. There would have been no need or purpose for Bellanger to report Kelman to Portney and AMC’s attorney if she did not believe Kelman was acting on behalf of the company. Further, AMC’s attorney responded to Bellanger by informing her that she should not be treated that way and that he would talk to Kelman about it-further evidence that AMC intentionally caused Bellanger to believe that Kelman was its agent. If Kelman was not AMC’s agent, why would its attorney indicate any responsibility for Kelman’s conduct?
¶29 All of this evidence, not contradicted by Bellanger, along with the evidence that AMC knowingly permitted Kelman to be on the premises and to supervise Bellanger’s work, sometimes abusively, was sufficient for the District Court to conclude that, under the statute, AMC had “intentionally or by want of ordinary care” caused Bellanger to believe that Kelman was AMC’s agent. I believe the evidence reveals that AMC’s “want of ordinary care” with regard to Kelman’s actions was rampant, and the District Court correctly concluded that Kelman’s agency was communicated thereby to Bellanger. Bellanger offered nothing to refute this evidence. Indeed, her observations and understanding about Kelman’s authority only bolstered Kelman’s agency claim.
¶30 I would affirm the District Court’s entry of summary judgment in favor of Kelman.